UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------
In re

                JUDY WALTERS                                    05-70082 B

                                                          <u>DECISION & ORDER</u>


                                    Debtor
----------------------------------------------------


                          Thomas A.  Dorey, Esq.
                          P.O. Box 247
                          Lakewood, New York 14750
                          Trustee and Attorney for the Trustee

                          Hodgson Russ LLC
                          Craig T. Lutterbein, Esq., of counsel
                          The Guaranty Building, Suite 100
                          Buffalo, New York 14202
                          Attorneys for Eric Heltz


Bucki, Chief U.S.B.J., W.D.N.Y.

        In this Chapter 7 case, the trustee seeks turnover of the net proceeds attributable

to a sale of the debtor's interest in a parcel of real property.  Claiming that the debtor

retained only a legal interest in the title, a joint owner challenges the existence of any

equitable right to those proceeds.


        During the autumn of 1993, Eric Heltz and Julie Panek entered into a contract for the

purchase of real property located at 245 Union Street in the Village of Hamburg, New York.

Upon learning that they would not qualify independently for financing, Eric and Julie asked

three of their parents to join with them in acquiring the property.  With benefit of their

combined credit, this new group of purchasers was able to secure a mortgage commitment

that enabled them to complete the purchase.  Thus, by deed dated December 8, 1993, title

was duly transferred to Eric A. Heltz; to his mother, Judith L. Walters; to Julie A. Panek;

and to her parents, John M. and Jane E. Panek.

The property at 245 Union Street is improved by a structure containing three residential units. Shortly after their acquisition of an interest in that building, Julie Panek and Eric Heltz were married to each other. As Mr. and Mrs. Heltz, they then occupied one of the three apartments and leased the other two units to tenants. In an affidavit filed in this proceeding, Eric Heltz represents that he and his wife assumed sole responsibility for the maintenance of the property; that they made all mortgage, tax and utility payments; and that they claimed all rental income and expenses on their joint tax returns. The parents may have facilitated the initial financing by reason of joining in execution of the note and mortgage, but they otherwise did not share either the burdens or benefits of the property.

Judy Walters filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 8, 2005. On the front page of her petition, the debtor acknowledges that she is also known as Judith L. Walters. However, neither the accompanying schedules nor the statement of financial affairs contain any reference to an interest in the property at 245 Union Street. After hearing the testimony of the debtor at the meeting of creditors, the trustee filed a report of no distribution. The case then closed on June 13, 2006.

In the fall of 2013, Eric and Julie Heltz entered into a contract for the sale of 245 Union Street. In examining title, counsel for the purchaser discovered the interest of the parents and the bankruptcy of Judy Walters. After negotiations, the buyer agreed to accept a deed signed by the five owners of record, but on condition that the sum of $13,301.94 be held in escrow pending a resolution of the interest of the debtor's bankruptcy estate. The sellers then notified the prior trustee, Thomas Dorey, who promptly moved to reopen the case. Upon that reopening and his reappointment as trustee, Dorey filed the present motion to compel a turnover of the funds now held in escrow. Eric Heltz opposes that relief.

Section 541(a)(1) of the Bankruptcy Code provides generally that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Contending that Judy Walters held an interest of consequential value in the property at 245 Union Street, the trustee seeks to recover all net proceeds attributable to the debtor's share of ownership. *See* 11 U.S.C. § 542. Eric Heltz responds that the reach of estate property is subject to the limitations of 11 U.S.C. § 541(d), which states in relevant part as follows:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Heltz asserts that his mother holds no equitable interest in the property. In paragraph 16 of his objection, Heltz's counsel then summarizes the factual predicate for this argument as follows: "Here, although she held title to the Property, the Debtor never became an equitable owner of the Property because she never paid any money towards either the purchase price or the maintenance of the Property. Furthermore, neither the Debtor nor the other title owners of the Property ever intended for the Debtor to become an equitable owner of the Property."

## Discussion

Eric Heltz challenges the existence of the estate's equitable interest, but raises no issue about the allocation of value to that interest. However, both considerations have relevance to the proper resolution of this dispute. Accordingly, we will consider first whether the trustee retains rights in 245 Union Street and second, whether those rights necessarily compel a turnover of escrowed proceeds.

Consequences flow from the form of ownership that parties may adopt. In 1993, Eric and Julie Heltz learned that lenders were unwilling to finance their acquisition of 245

Union Street.  However, by restructuring the transaction to include their parents as co-owners, Eric and Julie obtained the necessary mortgage commitment.  The parents may not have paid money, but they gave valuable consideration by their assumption of potential liability.  By accepting less than full ownership of the property, Eric and Julie derived access to credit based on the financial standing of their parents.  But with that benefit came burdens that this court cannot now overlook to the detriment of creditors.

No one disputes that at the time of bankruptcy filing, Judy Walters and four other owners shared a legal interest in 245 Union Street.  Rather, the respondents assert that the debtor has somehow forfeited the equitable interest that would normally correspond to her legal position.  Even though this dispute arises in bankruptcy, such issues of property are defined by state law.  *Barnhill v. Johnson*, 503 U.S. 393, 398 (1993).  In New York, General Obligations Law § 5-703 contains the current codification of what is commonly  referred to as the statute of frauds.  Subdivision (1) of this section states:

> An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same . . . .

Here, the debtor has executed no instrument which might create, grant, assign, surrender or declare an equitable interest for the benefit of Eric and Julie Heltz.   Consequently, any such equitable interest could only evolve by operation of law, such as through a constructive or resulting trust.

In *Tese-Milner v. TPAC, LLC. (In re Ticketplanet.com)*, 313 B.R. 46, 68 (Bankr. S.D.N.Y. 2004), Judge Gropper summarized the standard for imposition of a constructive trust as follows:

> Under New York law, a constructive trust arises against an entity that, by fraud (actual or constructive), by duress or by abuse of confidence, or by commission of a wrong or other form of unconscionable conduct, artifice, concealment, or questionable means, either has obtained or holds the legal right to property which in equity and in good conscience it ought not to hold and enjoy.

In the present instance, the record contains no evidence of any wrongful conduct or circumstances that might even suggest an outcome of unjust enrichment. Having allowed the use of her credit standing, Judy Walters might appropriately retain at least some equitable rights. Those equitable rights now rest with the trustee, who may recover that interest for the benefit of creditors.

A resulting trust arises "when one person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another." *Western Union Tel. Co. v. Shepard*, 169 N.Y. 170, 181 (1901). Those who facilitate access to credit may reasonably demand participation in the fruits of the consequential investment. Equitably, therefore, Judy Walters had no obligation to dedicate her property interest for the benefit of other family members.

The respondents suggest no other theory for the imposition of an equitable interest that would subsume the rights of Judy Walters. We cannot doubt that Judy Walters would prefer that her equitable interests belong to her son and daughter-in-law rather than to her creditors. Nor is it necessarily unreasonable for Eric and Julie Heltz to expect this result. Outside bankruptcy, solvent parents are at liberty to exercise such generosity. But the filing of a bankruptcy petition has changed the operative environment. Now that the rights of creditors are implicated, a parent's personal desires must defer to the trustee's obligation to maximize a distribution of available assets.

The instant dispute resembles *In re Wittmeyer*, 311 B.R. 137 Bankr. W.D.N.Y. 2004), where a former spouse argued that his equitable interests superceded the debtor's legal title to an automobile. My esteemed colleague, the Honorable Michael J. Kaplan, ruled that the public record controlled in determining property rights:

> In sum, decisions to avail oneself of the protections of law, or not to do so, have consequences that are not to be avoided (once the rights of innocent third party creditors are invoked in the bankruptcy process) simply because the decision has become inconvenient for the parties or because their original intention is going to be defeated.

*Id.* at 144.  Similarly, Eric and Julie Heltz took title to 245 Union Street in a form that they themselves accepted.  As holders of an interest in the property, they will retain the legal and equitable rights that correspond to the deed that was recorded on their behalf.  Having accepted the benefits that followed from that form of deed, however, they must also accept its consequences.

The indenture of December 8, 1993, operated to convey 245 Union Street to five individuals: Eric A. Heltz, Julie A. Panek (now known as Julie Heltz), Judith L. Walters, John M. Panek, and Jane E. Panek.  This deed further stated that "Each of the Grantees herein shall hold title as 'Tenants in Common', however with respect to the interest held by John M. Panek and Jane E. Panek, husband and wife, their interests shall be as 'Tenants in the Entirety' as between themselves."  Pursuant to New York Estates, Powers and Trusts Law § 6-2.2, "[a] disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy."  In the present instance, both by presumption and by reason of express grant, Judy Walters acquired a tenancy in common.  Thus, we must now assess the equitable rights that are allocable to that legal interest.

Tenants in common will typically hold property in equal shares, but this result is subject to exceptions.  Under New York law, the controlling standard was stated by the court in *Perrin v. Harrington*, 146 A.D. 292, 296 (4th Dept. 1911): "While it is true that tenants in common presumptively take in equal shares, this is a presumption only, which may of course be rebutted if the facts show that equitably they should hold in different shares" (citations omitted).  Thus, in *Perrin*, the court assigned an interest that was proportional to the investment of the two owners.  The court in *Secrist v. Secrist*, 284 A.D. 331, 333-34 (4th Dept. 1954) acknowledged the same controlling standard: "There is a presumption that tenants in common hold in equal shares but this presumption may be rebutted when the facts show that they hold in different shares."  Nonetheless, because the co-owners were married to each other at the time that the husband used his separate

resources to purchase the property in question, the court in *Secrist* preserved the entitlement to an equal allocation of proceeds.

The absence of contribution to the purchase price will not by itself rebut the presumption of equal ownership. In *Bell v. Little*, 204 A.D. 235 (4th Dept. 1922), Judge Sears expressed this rationale in a decision that reversed a ruling that had awarded the entire proceeds to one of two co-owners:

> Plaintiff not being the wife of James Bell, the grantees became tenants in common of this property. Presumptively, their interests in common were equal. This presumption is not rebutted by the fact that no part of the consideration was paid by the plaintiff, for the inclusion of her name in the conveyance as one of the grantees establishes conclusively that she acquired some interest in the premises.

*Id.* at 238 (citations omitted).

In the present instance, the lack of any direct monetary investment by the mother serves as only one of many relevant factors. Without participation from parents, Eric Heltz and his wife maintained the property, managed the rental units, and arranged for payment of taxes and any sums due on account of the mortgage. Over the course of twenty years, the mother never made claim to any income from the property or to any income tax deductions related to property taxes or the payment of mortgage interest. Collectively, these facts persuade the court to find that Eric Heltz has rebutted the presumption of equal distribution. Nonetheless, pursuant to the authority of *Bell v. Little*, the debtor's status as a co-owner will compel a recognition of some interest in the proceeds of sale.

The trustee's motion is granted to the effect that the respondents must turn-over the interest of the estate in any net proceeds of sale. At this time, however, the record is insufficient to allow a determination of the estate's percentage of interest in the retained sum of $13,201.94. In particular, Mr. and Mrs. Heltz have thus far presented no proof regarding the amount of their own monetary investment in the property. *See Johnson v. Depew*, 33 A.D.2d 645 (4th Dept. 1969). From all interested parties, the court would welcome evidence and argument regarding the value of the access to credit that derived

from the debtor's participation in this investment.  The parties may also wish to argue whether the monetary allocation needs to consider the value of occupancy, particularly for the period after the date of bankruptcy filing.  *See Johnson v. Depew*, 38 A.D.2d 675 (4th Dept. 1971).  To allow consideration of these and other relevant factors, the court will hereafter schedule a telephone conference with the parties to discuss arrangements for a further evidentiary hearing.  Until such time as this court issues a ruling on its allocation, the disputed sum of $13,201.94 shall continue to be held in escrow.

　　　　So ordered.


Dated:　　　Buffalo, New York　　　　　 /s/　　CARL L.  BUCKI 　　　　　　　　
　　　　　　August 6, 2014　　　　　 Hon.  Carl L.  Bucki, Chief U.S.B.J., W.D.N.Y.